**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| ALIREZA BAKHTIARI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No. 4:11-cv-000971-SNLJ |
| PATRICIA LEADER FRANK | ) | |
| AL- KHALEDY, et. al. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

**DEFENDANT MISSOURI COLLEGE, INC.'S MEMORANDUM IN
SUPPORT OF ITS MOTION FOR EXPEDITED DISCOVERY AND
ENTRY OF PROTECTIVE ORDER**

Pursuant to Federal Rules of Civil Procedure 26, 33 and 34, Defendant Missouri College,

Inc. moves for an order allowing expedited discovery and for a protective order.

**<u>INTRODUCTION</u>**

In his lawsuit, Plaintiff contends that someone at Missouri College sent two defamatory

letters – one to St. Louis media outlets, the other to the Jefferson County Sheriff.  *See* Complaint,

¶29; *see also* Exh. J and K (letters dated "April 29 of 2011" filed under seal by Plaintiff).[1]  The

letters are phony.  They are on outdated letterhead no longer in use.  The letterhead was in use,

however, when Plaintiff was employed as a part-time instructor at Missouri College in 2009.

Identifying the author and the sender of the letters is relevant to this case.

Missouri College denies that it created, published or disseminated these letters. Likewise,

Defendants Karl Petersen and Patricia Leader Frank (hereinafter Ms. Frank) deny Plaintiff's

allegations regarding the letters. Plaintiff offers no facts supporting his contention that Missouri

---

[1] References to Exhibits begin with Exhibit J because Exhibits A through I have been referenced in prior
filings by Missouri College.  Exhibits J and K are being filed under seal as this Court granted Plaintiff's
Motion to file these submissions under seal. *See* Dkt Nos. 3, 5.

College sent these unsigned letters other than the presence of outdated and unsigned letterhead on exhibits which are not original documents.  Missouri College suspects that someone other than the Defendants in this case may have created the letters.  Proof of that suspicion will involve electronic discovery.

Also in his lawsuit, Plaintiff contends that email messages were sent to him by current and former students of Missouri College.  The emails, he contends, contain nude photographs as attachments.  He also contends that the emails solicit his assistance to help obtain jobs in the erotic massage industry in Las Vegas.  (Plaintiff has some role, by his account, in a company known as Yantra Group, which he contends has operations in Las Vegas.)  **Plaintiff has already admitted to having destroyed the electronic versions of some of those alleged emails.** Missouri College suspects that someone other than Defendants created these emails.  Because of Plaintiff's spoliation, though, proof may be impossible for at least some of the purported emails, and will become more expensive as time passes.  Conveniently, Plaintiff only provided Missouri College representatives with hard copies (paper versions) of those emails.

Plaintiff would have this Court connect the emails with nude photographs to the alleged letters dated "April 29 of 2011".  In these unsigned letters, both hoaxes using outdated letterhead, a contention is asserted that Plaintiff is in the sex trafficking business.  Missouri College did not create, publish or disseminate either letter.  Missouri College also did not create, publish or disseminate an undated and unsigned letter allegedly mailed in September 2010, which was the basis of a prior suit by Plaintiff.

Who would do such a thing?  Could Plaintiff be capable of creating emails from young women, attaching "nude" photographs of those women to the emails, then creating a letter to the media in which he "libels" *himself*?  The present motion need not resolve that question.  At issue

- 2 -

here is the preservation of evidence.  Plaintiff claims to have destroyed some of the older emails

and the original electronic copies of the "nude" photographs allegedly attached thereto, but in his

Complaint he claims to have received <u>new</u> emails and photos.  *See* Complaint ¶ 16 (the "flow of

such disturbing requests and nude photos of students to Plaintiff, **as of the day of this filing, still**

**continues**.") (emphasis in original).  Those must be preserved.  Given Plaintiff's history, a

protective order may be the only way to assure preservation.   Here is a further taste of Plaintiff's

description of some of the new pictures and photographs:



These quotes are from a letter Plaintiff sent to a parent organization of Missouri College.  *See*

Exh. L, Letter from Plaintiff dated June 1, 2011 (filed under seal).[2]

Under Rule 33(b)(2) and Rule 34(b), the Court is empowered with the discretion to order

a shorter or longer time than thirty days in which to respond to a Request for Entry Upon Land

and, under Rule 26(c), the Court is specifically empowered to specify the time at which discovery

pleadings are to be answered.  *See* 8 Charles Alan Wright, et al., *Federal Practice and*

*Procedure*, §2038 at 506 (2d Ed. 1994); *see also* FED. R. CIV. Pro. 26(d) (district court has

discretion to enter an order regarding timing and sequence of discovery); *and* 8 Charles Alan

Wright, et al., *Federal Practice and Procedure*, §2047 at 593 (2d Ed. 1994) (Rule 26(d) makes

---

[2] A CD of Plaintiff's filings in this case and a variety of photographs, but no purported emails,
accompanied Exhibit L.  Exhibit L, along with a copy of the disc provided by Plaintiff with this
correspondence, identified as Exhibit M, are being submitted to the Court pursuant to Missouri College's
Motion to File under Seal.

explicit the discretion afforded a district court in Rule 26(c)(2)).  Missouri College respectfully requests that this Court enter the protective order and expedited discovery requested herein.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.      Mr. Bakhtiari is a Frequent Plaintiff

Plaintiff, a former part-time instructor at Missouri College, is a frequent litigator.  Indeed, the present case represents his *third* case against Missouri College and his *second* case against Ms. Frank since separating employment from Missouri College in April 2009.  Further, a search of public filings for the United States District Court for the Eastern District of Missouri in "PACER," and Missouri state court filings in Missouri's "case net" shows that Plaintiff has been a litigant in over two dozen proceedings.

In the Complaint filed in this matter, Plaintiff asserts *thirty* counts, including eleven counts of "libel", eleven counts of breach of contract, four counts of various breaches of care alleged by Plaintiff, as well as abuse of process, malicious prosecution, wrongful arrest, and wrongful imprisonment.  As referenced above, Plaintiff has sued Missouri College before, most recently in *Bakhtiari v. Missouri College, et al.*; Case No. 10-cv-1856SNLJ wherein Plaintiff asserted five counts of "libel" and five counts of breach of contract.[3]  This case represents Plaintiff's *third* defamation case brought against a former employer based upon an allegedly defamatory letter sent to the St. Louis Post-Dispatch.  *See* Exh. O, pp. 1, 2, 39-53, 83-104, 105-22.  In addition to his lawsuits against Missouri College, Plaintiff has filed libel/defamation suits against former employers and others.  *Id.; see also, id.,* pp. 123-144 and Exh. N.

---

[3] Notwithstanding the dismissal with prejudice of that lawsuit, *see* Case No. 10-cv-1856SNLJ, Dkt No. 45, Plaintiff has realleged each of the ten counts in that action verbatim in this action.  *Compare* Complaint (in this action), Counts 1 through 10 *with* Exh. N , Plaintiff's Complaint in Case No. 10-cv-1856SNLJ (the "October 2010 Complaint"); *see also* Missouri College's Motion to Dismiss and Supporting Memo., Dkt. Nos. 22, 27.

- 4 -

In this case, Plaintiff also alleges claims of abuse of process, malicious prosecution, wrongful arrest, and wrongful imprisonment claims.   Plaintiff has previously filed no less than two other cases alleging abuse of process, one of which also included, as in this case, allegations of malicious prosecution, wrongful arrest, wrongful imprisonment and negligence claims.  *See* Exh. O, pp. 1, 2, 3-21, 123-144; Exh. N (abuse of process cases).  Exhibit O references other cases filed by Plaintiff in this District and the Circuit Court for the City of St. Louis , but does not reference all cases in which Plaintiff has been involved or cases in other jurisdictions.

> **2.**    **Plaintiff Has Sued Missouri College and Patricia Leader Frank, Plaintiff's Former Employer and Girlfriend Respectively, Multiple Times**

> **A.**    **Plaintiff's Relationship with Defendants and his claim that Patricia Frank Sent Him Nude Photographs, a Claim Ms. Frank Denies**

A discussion of Plaintiff's previous employment with Missouri College, his relationship with Ms. Frank, as well as his prior claims against each, provides the proper context for the pending lawsuit and the unique circumstances presented to the Court in this matter.

Plaintiff taught a number of courses at Missouri College from approximately November 2008 to April 17, 2009.  For several weeks in early 2009, Plaintiff and Ms. Frank had a romantic relationship, including a trip to Chicago.  At some point in time, roughly in late February or early March 2009, the relationship ended. Thereafter, Ms. Frank married Haider Al-Khaledy, a man she had dated in the past.  Mr. Al-Khaledy is a native of Iraq.  In his Complaint, Plaintiff discusses his relationship with Ms. Frank, along with his judgment that Ms. Frank's conduct constituted an "affair," notwithstanding the fact that she married Mr. Al-Khaledy *after* the relationship between Plaintiff and Ms. Frank terminated.  *See* Complaint, ¶14.  Notably, Plaintiff continues to focus on his brief relationship with Ms. Frank, notwithstanding the fact that it ended *over two years ago*.

- 5 -

On April 16, 2009, over a month after the relationship between Plaintiff and Ms. Frank ended, an unfortunate development occurred.  On that date, at approximately 7:30 p.m., an email message was sent to all members of Missouri College's faculty and staff.  The sender used the email identity of "Buggy Red," and the address of *ladybug197112009@hotmail.com*.  The email, which was sent numerous times on the evening of April 16th, hereinafter referred to as the "Buggy Red email," revealed the prior relationship between Plaintiff and Ms. Frank.  The email included photographs of Ms. Frank, including several photographs of Ms. Frank and Plaintiff. The email also purported to include partially nude photographs of Ms. Frank and emails between Ms. Frank and Plaintiff.  Ms. Frank claims that the compromising photographs are not of her and that portions of the emails had been altered.[4]

The contents of the Buggy Red email were taken quite seriously by Missouri College. Ms. Frank, who was visibly distraught by these events, did not deny having a short-lived romantic relationship with Plaintiff.  However, she emphatically denied sending Plaintiff any electronic messages containing nude photographs of her.  Further, she strenuously denied that the nude photographs depict her.

Plaintiff also admitted to having a romantic relationship with Ms. Frank.  His story regarding the emails and photographs was much different, however.  Plaintiff insisted that Ms. Frank had, indeed, emailed him the compromising photographs.  Further, Plaintiff said that he had the email from Ms. Frank and would show it.  Using his mobile phone, he accessed images and messages on the spot.  Rather than showing any emails from Frank, however, Plaintiff showed the Missouri College representative a compromising photograph of a woman whom he

---

[4]Because of the content of the emails and nature of some of the attached photographs, a copy of one of the "Buggy Red" emails and attachments are being filed under seal as Exhibit P.

described as a former girlfriend and said that when Frank saw that photo she decided to send one of herself.  Missouri College turned the conversation back to Plaintiff's claim that he had proof of Ms. Frank sending the offending email and requested that Plaintiff supply that proof.  Plaintiff stated that he could not find it right then but committed to doing so.  He never did.

During the course of the investigation, it was determined that the attachments to the "Buggy Red" email that purported to be emails from Ms. Frank's Missouri College email account had never been on the school's email system.   *See* Exh. Q, Declaration of Sergio Siguenza, Director of Security Response Team.  Moreover, the investigation showed that attachments to the "Buggy Red" email appeared to have been doctored using cut-and-paste techniques.  In particular, please note that the cutting and pasting is particularly poorly done and arguably several letters are visible in a close-up of one excerpt.  *See* Exh. R, Declaration of Chris Visnovske, IT Manager for Missouri College; *see also* Exh. S.

### B.     The MCHR Claim

Plaintiff never produced the photographs allegedly sent to him by Ms. Frank.  Ultimately, Missouri College determined that it was no longer appropriate for Plaintiff to teach at, or have any further relationship with, Missouri College.   Thereafter, on or about April 24, 2009, Plaintiff filed a charge of discrimination and retaliation with the Missouri Commission on Human Rights and the Equal Employment Opportunity Commission against Missouri College and a number of faculty members/administrators at Missouri College (the "MCHR Claim").

### C.     The Frank Claim

On or about April 21, 2009, Plaintiff filed a lawsuit alleging various common law actions against Ms. Frank in the Circuit Court of the City of St. Louis, Missouri (the "Frank Lawsuit").  Ms. Frank was and is the director of Missouri College's Dental Assistant Program.  ████████

- 7 -

████████████████████████████████████████████████

██████████████████████████████████████

       **D.**    **████████████████████, an Anonymous Email from "CEC Watch Dog" Was Circulated Which Included False Information** ████████████████

On July 8, 2009, an email was sent to a number of Missouri College employees, but was also sent to the personal email addresses of Plaintiff (by then no longer an employee) and Ms. Frank, that included photographs of Ms. Frank's then recently born granddaughter, AJR.[5]  The email grossly exaggerated the terms of ███████████████ and suggested that Plaintiff made threats regarding Ms. Frank's granddaughter ███████████████████ ████████  Ms. Frank's daughter has stated that the photographs attached to this email, sent anonymously from the email address *cecwatchdog2@hotmail.com*, had been posted on her Facebook account. *See* Exh. T (filed under seal).[6]

News reports indicate that about one year later, after Plaintiff had settled an unrelated lawsuit, styled *Alireza Bakhtiari v. Paul Lutz, The Board of Curators of the University of Missouri, and the Curators of the University of Missouri*, Cause No. 4:04-cv-01071-AGF, an email message from "umwatchdog" was sent to The Missouri Miner, the student newspaper of the Missouri University of Science and Technology (MS&T). *See* Exh. U.  Plaintiff previously referred to this article as a university press release.   In fact, The Missouri Miner issued a correction stating as follows:

> An article on page one of today's issue of The Missouri Miner incorrectly stated that it was a "Missouri S&T Press Release."  The article did not emanate from the Missouri S&T office of public relations or from the communications department.

---

[5] Pursuant to Local Rule 2.17, only the initials of Ms. Frank's granddaughter are being referenced.

[6] Because of the content of the "CEC WatchDog" email references a minor (a newborn) and photographs of the minor, the email and attachments are being filed under seal as Exhibit T.

*See* Exh. V, "Missouri Miner story was not from a news release."  Thereafter, The Missouri Miner issued a formal "retraction" indicating that the original article grossly overstated the amount of the settlement paid to Plaintiff by the University (as the cecwatchdog2 email had done), acknowledging the inaccuracies in the original article, and stating that the newspaper had "published the article UM WatchDog sent us verbatim, without bothering to check with any university official to see whether the information was factual or not." *See* Exhibit W. [7]

████████████████████████████████████████████.  "UMwatchdog" in one ("UM" apparently referring to University of Missouri) and CECwatchdog2 in the other ("CEC" apparently referring to Career Education Corporation, a parent organization for Missouri College).  The matching monikers and circumstances could, in theory, be coincidental, but that seems remote given the timing of the emails ███████████████, the common party (Plaintiff), the subject matter ████████████████, and the consistent exaggeration of ██████████████.  As is discussed in more detail below, in a September 2006 decision in litigation involving Plaintiff (but not the Defendants in this action), Judge Flessig stated that it was "undisputed that an undergraduate student did complain about emails sent to her by Plaintiff without disclosing his true identity." *See* Section 4 below, pp. 15-16.   This suggests that Plaintiff creates and/or sends emails under aliases.

> **E.    Plaintiff's October 2010 Complaint Claims that Current and/or Former Students Emailed Plaintiff Nude Photographs – Two of These Students Deny Sending Plaintiff *Any* Emails**

As referenced above, Plaintiff previously filed a Complaint against Missouri College and another defendant alleging five counts of breach of contract and five counts of "libel."  *See* Exh.

---

[7] *See also*, Exh. X, September 15, 2009 article from The Rolla Daily News (referencing inaccuracies and including statements attributed to Plaintiff).

N (the "October 2010 Complaint").  The October 2010 Complaint concerned an undated and unsigned letter which Plaintiff alleged was mailed to the St. Louis Post-Dispatch and local St. Louis television stations on September 20, 2010 (the "September  Letter").  Plaintiff filed the September Letter as an attachment to the October 2010 Complaint, but never requested that the letter be filed under seal in the October 2010 litigation.[8]  In the October 2010 Complaint, Plaintiff also alleged that he received phone calls and emails beginning in January 2010 from individuals he identifies as current or former students of Missouri College or its affiliates.  *See* Exh. N, ¶ 15.  Plaintiff alleged that students "e-mailed their nude photographs to Plaintiff and proposed themselves to Plaintiff to be recruited as massage therapists or dancers in Las Vegas." *Id*.

In that litigation, Plaintiff produced Rule 26 Disclosures naming purported students who allegedly sent the photographs and purported emails.   Plaintiff also produced seven emails which he claims were sent by current or former students.  Counsel for Missouri College have been able to interview two of these individuals.  Both deny knowing Plaintiff, sending Plaintiff the purported email he produced, or forwarding photographs to Plaintiff.  Both have stated that they have responded to employment postings on Craigslist and that the photographs produced by Plaintiff were or are available on their Facebook, MySpace, Bebo, or other webpages.

Plaintiff produced the documents comprising Exhibit Y, bearing bates nos. 00092 through 00096, which purport to be an email from Ebuni Lowe, a young woman approximately 22 years old.  After being contacted and presented with a copy of the purported email, Ms. Lowe executed a sworn declaration stating, in part, as follows:

---

[8] Plaintiff also filed a copy of the September Letter as an exhibit to this Complaint, this time under seal. *See* Dkt. Nos. 3, 5 (Plaintiff's Exhibit 1 and order granting filing under seal).

I didn't attend Missouri College and I don't know any person that goes by the name Al Bakt & I never met a person named Al Bakt.  I don't remember sending Al Bakt any e-mails and I reviewed the documents 00092-00096 and it is my resume and pictures, but I didn't send any e-mail marked plaintiff 00092 or pictures marked 00094-00096.  The pictures are photos of me, but I never submit my pictures with a job resume, but my pictures are public to where anyone can see them.  I'm competent to make this declaration.  I declare under penalty of perjury that the foregoing is true and correct.

*See* Exh. Z, Declaration of Ebuni Lowe.

Plaintiff also produced the documents comprising Exhibit AA, bearing bates nos. 00109 through 00110, which purport to be an email from Nicole Ryland, a young woman.  After being contacted and presented with a copy of the purported email, Ms. Lowe stated, in part, as follows:

I do not know a person by the name of Al Bakt.  I never met any one name Al Bakt or identifying himself as Al Bakt.  I have know recollection of send a e-mail to Al Bakt or any one with a similar name.  I review documents bates to lables plaintiff 00109 and plaintiff 00110.  The e-mail contains e-mails address, name, and phone number but I did not send the e-mail, plaintiff 00109.  The photograph attach to the e-mail, plaintiff 00110 is a photograph of me but I did not send this photograph with the attach e-mail or to Al Bakt. The photograph, plaintiff 00110 is it on my Face Book.  I declare under penalty of perjury that the foregoing is true and correct.

*See* Exh. BB, Declaration of Nicole Ryland.  This is not the first time a woman has denied sending Plaintiff nude emails.  As was discussed above, Plaintiff claimed that Ms. Frank emailed him nude photographs.  Ms. Frank denied that claim.  Plaintiff claimed that Ebuni Lowe and Nicole Ryland emailed him nude photographs.  Both Ms. Lowe and Ms. Ryland deny emailing Plaintiff *any* photographs.  Ms. Lowe and Ms. Ryland claim the purported emails are phony.  If so, someone fabricated them.  Plaintiff produced these emails in the prior litigation but claimed he failed to preserve the emails in any format other than hard copy.

Plaintiff produced other emails which raise concerns. For example, Plaintiff produced an email purportedly from Rebecca Lahar Ross with six photographs attached.   While six

- 11 -

photographs were produced in hard copy, the email shows <u>no</u> attachments, raising the question of whether or not the photographs were sent with the email. *See* Exh. CC (Bates Nos. 111-118). Plaintiff produced this email in the prior litigation but claimed he failed to preserve the email in any format other than hard copy.

Plaintiff also produced an email purportedly from Ms. Tarris Murphy with five photographs attached. As with the Ross email, while five photographs were produced in hard copy, the email shows <u>no</u> attachments. More troubling is the fact that the word "Subject" in the email is misspelled as "Sbject" in the print out, which is highly irregular in that "Subject" is an automatic field in emails. *See* Exh. DD (Bates Nos. 119-125). The person who created the phony email purporting to be from Tarris Murphy was sloppy, making a mistake when creating the "Subject" field. Plaintiff produced this email in the prior litigation but claimed he failed to preserve the email in any format other than hard copy.

  **F.** **The Two "Students" Interviewed to Date Deny Sending Emails to Plaintiff, But Acknowledge Responding to Employment Opportunities on Craigslist. Plaintiff Advertises on Craigslist.**

Craigslist® is a website that provides "local classifieds and forums - community moderated, and largely free." *See http://www.craigslist.org/about/factsheet* ("What is Craigslist") (last visited July 11, 2011); *see also U.S. v. Nestor*, 574 F.3d 159, 160, n.1 (3rd Cir. 2009). As is noted above, two of the "students" Plaintiff claims sent him nude photographs deny sending Plaintiff *any* emails. *See* Exh. Z, BB. Moreover, one of the individuals was not even a student at Missouri College. *See* Exh. Z. These individuals do acknowledge responding to employment opportunities on Craigslist, but deny submitting photographs with their applications.

The mobile phone number listed for Plaintiff in this Complaint is (314) 277-1958. *See* Complaint, p. 24. A number of advertisements posted on Craigslist reference the (314) 277-1958 phone number, including Exhibit EE, which references the following:

- Employment and Laborers Lawyer . . . . Don't Act Too Late . . . Companies Have No Mercy On ANY ONE. . . MO-IL  Problems at work? Pay dispute, hostile work environment, racial harassment, sexual harassment, retaliatory behavior by employer, hostile supervisors. . . call us, we will fight them for you.  All FREE, if you don't get paid, we won't get paid Yantra Litigation Services Yantra.law@gmail.com 314-277-1958 314-351-0431 PostingID: 1951271000.  *See* Exh. EE, p. 1.

- Injured At work?.....CALL US IMMEDIATELY ... you take action before you (sic) employer surprises you.  Employers don't risk, why should you?  Yantra Litigation Services Yantra.law@gmail.com 314-277-1958 PostingID: 1995612800  *Id.,*  p. 2.

- Problems at work? Pay dispute, hostile work environment, racial harassment, sexual harassment, wrongful termination, retaliatory behavior by employer, hostile supervisors. . . call us, we will fight them for you.  All FREE, if you don't get paid, we won't get paid Yantra Litigation Services Yantra.law@gmail.com 314-277-1958  PostingID: 2024292943  *Id.*, p. 3.

A biography on "LinkedIn" for someone of the name "Al Bakt" references "Washington University in St. Louis School of Law 2004-2007" and lists "Operating Manager, Yantra Law, LLC. February 2007 - Present" under "Experience."  *See* Exh. FF.  Plaintiff does not have a license to practice law in Missouri.  Other Craigslist postings referencing Plaintiff's phone umber and/or the yantra.law@gmail.com email address include the following:

- Most successful St. Louis area DUI and DWI lawyers, $500 fee Date: 2010-11-01, 11:15AM CDT Reply to: Yantra.law@gmail.com . . . Yantra Litigation Services Yantra.law@gmail.com 314-277-1958 . . .

- STL Computer Tutors Group(*** Our tutors come to your location of choi Date 2010-10-27, 7:40AM CDT Reply to: Yantra.law@gmail.com, STL Computer

*See* Exhibit GG (top two cache entries)

### 3.  Reports Claim that Plaintiff Has Used His "Cyber Forensics" and Email Expertise to Investigate Individuals Pretending to Be Someone Else On Craigslist

Plaintiff (also known as "Al Bakt" or "Bakt" as he sometimes prefers to be called) has been described as a "cyber forensics expert" in two television news reports regarding his role in resolving incidents involving Craigslist.  Plaintiff has never denied such a label, to the

- 13 -

knowledge of Missouri College.  He is, at the very least, presumed to be skilled at the creation, modification, and destruction of electronic evidence.  Plaintiff has been referred to as "a cyber forensic expert" during a report regarding his role in resolving incidents involving Craigslist.

A transcript of one of the television reports is attached as Exhibit HH.  The report provides, in part, as follows:

| | |
|---|---|
| Reporter: | A family friend who is a cyber forensics expert began calling the individuals who were contacting her and tracking the emails. |
| Bakt: | Three or four of them told me that they were already on the sex offender's list, they did not want any further problems. |
| Victim: | With that Craigslist killer that was out there, you know, what if she would have contacted him, and what if he would have come after me?  My life would have been over, my kids. |
| Reporter: | Bakt praises Craigslist, Facebook, and MySpace for helping speed the cyber investigation.  But so far, the suspect has only gotten a summons for violating a County harassment ordinance. |
| Bakt: | She is assigned to appear in a night court along side some other traffic citations, but when you look at the facts, you'll see the crime is much more heinous than crossing a stop sign. |

*See* Exh. HH (transcript of report). [9]

A transcript of another television report is attached as Exhibit JJ.  This report provides, in part, as follows:

| | |
|---|---|
| Reporter: | Mike, this ordeal started last month when a St. Louis County woman started getting calls to her cell phone.  Men and women said they were responding to her sex related Craigslist message.  The problem is the woman, who does not want to be identified, said she'd never ever been on the popular website. |
| Anonymous Woman: | I wouldn't want my worst enemy going through that.  Ever. |
| Reporter: | This mother of two is talking about her emotional experience as the victim of an internet crime.  It started when a woman she never met began logging onto |

---

[9] Exh. II, a CD containing the video and audio of this report, is being filed in hard copy with the Clerk's Office and is included with the service copy being provided to Plaintiff and counsel of record.

- 14 -

|                    | Craigslist pretending to be her.  The woman replied to numerous ads by men and women seeking everything from sex to sex parties.  Replies included the victim's name, phone number and even her address. |
|---|---|
| Anonymous Woman: | I felt that I had been raped, violated.  I was mad.  Scared.  There is no – you know, you can't imagine feeling like that. |
| Reporter: | Especially when several people began calling and leaving her messages, some saying they were on the way to her home. |
| Anonymous Woman: | And the fact that I've got two small kids at home – knowing that my information was given out and then come to find out that, you know, some of the people that she had contacted were registered sex offenders. |
| Reporter: | Fortunately, after several hours of work, a cyber forensics expert and family friend was able to track down the original sender behind the fake emails before any further harm could be done. |
| Al Bakt | And that individual had a picture on her MySpace profile.  Well, out of luck.  And with confirmed and affirmed IP address of the computer that was being used to send these emails. |

*See* Exh. JJ (transcript of report).[10]

### 4.    Plaintiff Has Previously Sent Emails to A Woman Without Disclosing His True Identity.

As is noted above, Plaintiff brought suit in case styled *Alireza Bakhtiari v. Paula*

*Lutz, The Board of Curators of the University of Missouri, and the Curators of the*

*University of Missouri*, Cause No. 4:04-cv-01071-AGF.  On September 15, 2006, Judge

Fleissig issued judgment in favor of defendants, stating, in part, as follows:

> [I]t is undisputed that **an undergraduate student did complain about e-mails sent to her by Plaintiff without disclosing his true identity**, and that the matter was serious enough to cause a police investigation. That Plaintiff elected, as a result of the investigation, to take steps to resolve the matter to the satisfaction of the police in no way suggests that this was not considered a serious matter by Dean Lutz.

*See* Exh. LL, Memorandum and Order dated September 15, 2006, Dkt. No. 101 in Cause

No. 4:04-cv-01071-AGF, p. 21 (emphasis added).[11]

---

[10] Exh. KK, a CD containing the video and audio of this report, is being filed in hard copy with the Clerk's Office and is included with the service copy being provided to Plaintiff and counsel of record.

- 15 -

**5**.    **Plaintiff Claims To Have Failed to Preserve the Original Emails He Claims to Have Received From Purported Current and/or Former Students**

As described above, evidence suggests that someone may have created emails purporting to be sent to Plaintiff.  In connection with the October 2010 Complaint, Plaintiff admitted that he did not maintain electronic versions of the emails at issue, leaving only hard-copy "paper" versions of the purported  messages, thwarting, at least to some extent, forensic examination and/or tracing of such messages to the real creator/sender.  These emails are critical evidence in the present case, if they ever existed, as Plaintiff has re-alleged all ten of the counts comprising the October 2010 Complaint.  Central to Plaintiff's claims are his allegations that he is receiving telephone calls and emails from students mailing "nude photographs" to him and seeking positions as massage therapists or dancers in Las Vegas.  *See* Complaint, ¶ 16.  These messages come from very young women, arguably unsophisticated.  Plaintiff claims that these requests continue "as of the day" of the filing of the Complaint.  To date, all of the young women identified by Plaintiff are minorities.

At least two of the alleged student emails with "nude photographs" were fabricated.  In all likelihood, more were fabricated.  While some evidence of this fabrication has already been obtained by Missouri College, the collection of additional evidence has been thwarted by Plaintiff's claim to have only preserved emails in hard copy.   Two of the six students have denied sending the emails produced only in hard copy by Plaintiff (the others have not been

---

[11] Plaintiff appealed the judgment to the Eighth Circuit.  The Eighth Circuit, in affirming summary judgment in favor of  defendants stated as follows:

. . . Bakhtiari filed a grievance with UMR's EEO Affirmative Action office, complaining that the student affairs office had treated him in a derogatory manner **while investigating his possible involvement with anonymous emails sent to a female UMR student**.

*See Bakhtiari v. Lutz*, 507 F.3d 1132, 1134 (8th Cir. 2007) (emphasis added).

- 16 -

contacted).  Those two deny even *knowing* Plaintiff.   More critically, for purposes of this

motion, **Plaintiff has admitted that he destroyed the electronic versions of these (phony)**

**emails**.

> **6.      Both the Jefferson County Sheriff's Office and the Mississippi County**
> **Family Services, Purported Recipients of the Unsigned Letter dated April 28,**
> **2011, Deny Receiving the Letter.**

Also central to Plaintiff's claims is a purported letter, unsigned, on outdated Missouri

College letterhead, allegedly sent to the Jefferson County Sheriff and dated "April 29 of 2011."

That unsigned letter, according to Plaintiff's Complaint, caused him to be arrested, imprisoned

and prosecuted.  *See* Complaint, ¶ 30.   The letter allegedly sent to the Jefferson County Sheriff

on outdated Missouri College letterhead may also be a fabrication.  According to the Jefferson

County Sheriff's Department, no such letter was received and it denies having any records/files

pertaining to Plaintiff, under the name Alireza Bakhtiari or any of his known aliases during the

time period of April 15, 2011 to present.[12]

Further, Jefferson County participates in the  Missouri State Courts Automated Case

Management System, including Casenet.  Missouri's Casenet system makes no reference to any

criminal prosecution initiated against Plaintiff in regard to the purported April 29, 2011 letter.

*See* Exh. MM (printout for all cases initiated against A. Bakhtiari during 2011 – showing none).

Plaintiff also claims that Mississippi County Family Services, a division of the Missouri

Department of Social Services ("MDSS") received the unsigned letter dated "April 29 of 2011."

*See* Complaint, ¶ 29, ¶¶ 90-94 (Count XIII), ¶¶ 95-98 (Count XIV).  In response to a Sunshine

---

[12] *See* Exh. A, June 7, 2011 Sunshine Law Request to Jefferson County Sheriff, and Exh. B, June 8, 2011
Response from Jefferson County Sheriff.  The letterhead on the fabricated letter was taken out of service
last year, but was in use in 2009 when Plaintiff was employed at Missouri College as an instructor.
These exhibits were referenced in a prior filing by Missouri College as Exhibits A and B.  To maintain
consistency, they are being referred to using the same designations in this filing.

Act request, MDSS denies having received any such letter. Not surprisingly, MDSS also denies

having any record relating to any action or alleged action taken on account of the letter which it

did not receive.[13]   Plaintiff's allegation that the unsigned letter of April 29, 2011 was received by

the Mississippi County Family Services is without merit.

> **7.      Plaintiff's Complaint Alleges, Falsely, that Criminal Trials Have Proceeded Against Haider Al-Khaledy, the former husband of Defendant Frank, and Alleges, Falsely, that Plaintiff Testified at Such Trials.**

In his Complaint, Plaintiff presents false information to this Court.  Plaintiff's Complaint

contains the following allegations:

> 19.      On or about August 2010, Plaintiff was contacted by the St. Louis County (Missouri) Prosecutor to testify as a fact witness against Frank and her husband in **a felony trial** of Frank and her husband in St. Louis County.  **Plaintiff appeared and delivered testimony**.

> 20.      On or about August 2010, Plaintiff was contacted by the Lincoln County (Missouri) Prosecutor to testify as a fact witness against Frank and her husband in **a felony trial** of Frank and her husband in Lincoln County.  **Plaintiff appeared and delivered testimony.**

> 21.      On or about August 2010, Plaintiff was contacted by the Litigation Unit of the Department of Homeland Security to testify as a fact witness against Frank's husband in his deportation proceedings.  Plaintiff appeared and delivered testimony.

> 22.      **In a mater of only days after Plaintiff testified against Frank and her husband,** on or about September 20, 2010 Defendants published a maliciously defamatory letter to KSDK 5 St. Louis, FOX 2 Knit St. Louis, KMOV 4 St. Louis, KPLR 11 St. Louis and St. Louis Post Dispatch which also reached in any other press organizations.  In this letter defendants attack Plaintiff's character and accuse him of trafficking women including female students for sex (Exhibit 1).

> * * *

> 25.      . . . Defendants published this letter in retaliation to Plaintiff's earlier litigations against them, also in retaliation to **Plaintiff's testimony in Frank's criminal trials**.

---

[13] *See* Exh. C, June 9, 2011 Sunshine Law Request to Mississippi County Family Services, and Exh. D, June 15, 2011 Response from MDSS.

*See* Complaint, ¶¶ 20-22; 25 (emphasis added).

First, Plaintiff could not have testified against [Ms.] Frank, because her ex-husband, Haider Al-Khaledy, was the defendant charged in these matters (with felony DWI and traffic offenses).   Second, Plaintiff did not testify at any such trials.  Indeed, there were <u>no</u> trials.  Notwithstanding Plaintiff's claim regarding his purported testimony in the above-referenced "trials," records from Lincoln County indicate that Mr. Al-Khaledy waived the preliminary hearing and pleaded guilty <u>without trial</u>.  *See* Exh. NN, "Waiver of Preliminary Hearing;" Exh. OO, "Guilty Plea," ¶30 (waiving right to trial) (personal information redacted); and Exh. PP (printouts from the Missouri State Courts Automated Case Management System, a/k/a "Case.net", referencing "Guilty Plea" regarding DWI charge) (personal information redacted).

Similarly, records from St. Louis County indicate that Mr. Al-Khaledy pleaded guilty <u>without trial</u>.  *See* Exh. QQ, Certified Record of "Plea of Guilty" of April 26, 2011; *see also* Exh. RR, Certified Copy of St. Louis County Docket Sheet, p. 8 ("Sentence and Judgment" form confirms that Mr. Al-Khaledy was "[f]ound guilty upon plea of guilty" as opposed to "by a Jury/Court").   In short, Plaintiff cannot be trusted and crucial evidence may be lost if expedited discovery is not allowed.

## <u>LEGAL ARGUMENT</u>

As described above, there is a high likelihood that this lawsuit is predicated on phony facts and fabricated evidence.  Given this background, Missouri College seeks two forms of relief that are narrowly tailored and will not materially prejudice Plaintiff in any respect:

First, a **preservation order** is appropriate because Plaintiff—reportedly a forensic computer expert—has admitted to destroying key electronic evidence.  To ensure the same thing does not recur, Plaintiff should be specifically ordered to preserve, in native format, the

electronic information in his possession which is relevant to his claim.[14]  Second, **expedited discovery of the original emails and letters referenced in Plaintiff's Complaint** is appropriate given the high likelihood that these documents could be or have already been tampered with, if not spun out of thin air.

I.   **A Preservation Order Is Necessary to Specifically Identify for Plaintiff, a *Pro Se* Litigant, of His Duty to Preserve Relevant Evidence.**

In proposing a preservation order, Missouri College requests nothing more than that the Court specifically require the *pro se* Plaintiff to fulfill his duty and "retain all relevant documents . . . and any relevant documents created thereafter."  *Trickey v. Kaman Indus. Tech. Corp.*, No. 1:09CV26 SNLJ, 2010 WL 3892228, at *5 (E.D. Sept. 29, 2010) (*quoting Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 218 (S.D.N.Y.2003)).  Given the routine nature of such a duty, litigants in other circumstances have simply agreed to the preservation order.  *E.g. Antioch Co. v. Scrapbook Borders, Inc.,* 210 F.R.D. 645, 650 (D. Minn. 2002) (litigant agreed with its duty to preserve evidence).

As a professed forensic computer expert, Plaintiff should be aware of his obligation to preserve evidence.  However, in prior litigation, Plaintiff allowed certain key evidence to be destroyed by claiming to only have preserved emails in hard copy format.   In order to prevent such an occurrence again—whether on purpose or by accident—Plaintiff should be specifically reminded of the duty, its scope and the serious consequences of violating this duty.

II.   **Missouri College Has Established Good Cause for Limited, Expedited Discovery Which Will Not Prejudice Plaintiff and Is in the Interests of Justice.**

Pursuant to Rule 26(d), the Court is specifically empowered to manage and control the

---

[14] Of course, Plaintiff is already under an affirmative duty to do so. As explained in this memorandum, sufficient bases exist to mandate the issuance of an order directed to the issue.

timing and sequence of discovery, and may order that a party proceed prior to the Rule 26(f) conference.  *See Crawford-El v. Britton*, 523 U.S. 574, 589 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery.").

Courts in the Eastern District of Missouri have adopted a two-part test[15] to show entitlement to expedited discovery: "[1] where the party establishes good cause," which "[2] in the consideration of administration of justice, outweighs prejudice to the responding party." *Arista Records, LLC v. Does 1-54*, No. 4:08-CV-1289, 2008 WL 4104563, at *1 (E.D. Mo. Aug. 29, 2008) (citing multiple cases); *see also Monsanto Co. v. Woods*, 250 F.R.D. 411, 413 (E.D. Mo. 2008).   As shown below, Defendant has established good cause warranting expedited discovery into the authenticity (or lack thereof) of the purported letters on which Plaintiff Bakhtiari bases his claims.  Plaintiff will not suffer any prejudice.  Finally, the interests of justice are served (1) by identifying whether there has been an attempt to misuse the Court system, and (2) whether the Plaintiff has fabricated his key evidence which will significantly affect the character of this case, the discovery of the parties, and the ultimate outcome.

> **A.    Missouri College Has Shown a Need for Expedited Discovery Based on the High Probability of Tampering or Fabrication of Evidence, and the Probability that Evidence May Be Lost.**

A "need" for expedited discovery can be shown by nothing more than the fact that evidence may disappear.  *Antioch*, 250 F.R.D. at 653-54 (adopting procedure for expedited

---

[15] In the past, some Courts applied a factor-based test tracking factors similar to a preliminary injunction which has not been adopted by the Eighth Circuit.  *Monsanto Co.*, 250 F.R.D. at 413 (citing a case from the Western District of New York).  More recently, these courts have rejected this test in favor of the more flexible two-part test described above.  *E.g. Stern v. Cosby*, 246 F.R.D. 453, 457 (S.D.N.Y. 2007) (noting the shift from the strict to the flexible test).  Even applying the "strict" test, however, Defendants have shown a high likelihood that Plaintiff fabricated the documents it seeks to discover, there is no prejudice to Plaintiff, and it is in the public interest to identify misuse and abuse of our Court system.  Thus, even under this more stringent test, expedited discovery is appropriate.

- 21 -

discovery based on fact that computers automatically over-write deleted information).  This need is certainly present in this case, given that Plaintiff has in the past "lost" native files of emails, pictures, and other evidence at the heart of his case.  Just last week, Plaintiff admitted to the Court that he "could have" destroyed electronic evidence:  "<u>Plaintiff, a world-traveler, could have allegedly destroyed electronic or paper-based evidence in Europe, in middle-east or midair across Atlantic in the airplane.</u>"[16]In light of Plaintiff's prior statements regarding the failure to preserve electronic evidence, there is a reasonable probability that information will also be "lost" in this case.  As in *Antioch*, that alone is sufficient to establish Defendant's need for expedited discovery.  There is much more, however.

Defendant Missouri College has shown a high likelihood that someone has either fabricated or tampered with key evidence.  In fact, many of Plaintiff's allegations are demonstrably false. Plaintiff alleges that he received emails from individuals who have denied even knowing him or attending Missouri College.  *See* Exh. Z, BB.  Plaintiff alleges arrest, imprisonment and prosecution by the Jefferson County Sheriff's Department, who has provided no record of such allegations, and, indeed, no record of the letter Plaintiff contends led to his purported imprisonment.  Need for expedited, phased discovery is also shown when there is evidence a litigant may have fabricated evidence, or tampered with evidence.  *E.g. Stern v. Cosby*, 246 F.R.D. 453, 457-58 (S.D.N.Y. 2007) (granting request for preservation order and expedited discovery based on evidence that litigant fabricated allegations and tampered with witnesses). Expedited discovery is particularly important in the face of evidence that a litigant has taken actions which "endanger[] the integrity of the judicial process."  *Id.*

---

[16] Plaintiff's "combined" Memorandum in Opposition to Defendant's Motions to Dismiss, Dkt. 36, p. 20.

**B**.     **Defendant's Request For Expedited Discovery Should Be Granted Because The Prejudice to Missouri College Outweighs Any Burden on Plaintiff.**

Defendant's request does nothing more than require earlier production of the key documents and information that Plaintiff has directly placed at issue in this suit.  Under these circumstances, there is virtually no hardship—it only accelerates discovery of information, which is not prejudicial as a matter of law.  *E.g. Semitool, Inc. v. Tokyo Electron Am., Inc.*,  208 F.R.D. 273, 277 (N.D. Cal. 2002) (there was no prejudice in requiring production of "core documents" at issue prior to initial disclosures).

The best evidence of Plaintiff's alleged receipt of emails from current or former Missouri College students is in Plaintiff's computer and electronic records.  If appropriate measures are not taken, electronic data could be altered or deleted.  If any of this electronic evidence is deleted and/or destroyed, the best evidence of the conduct Plaintiff complains about, or the lack thereof, will likely be lost (or at the very least be far more expensive to locate and recover).  The burden on Plaintiff will be minimal. As the affidavit from Missouri College's expert retained to perform the copying illustrates, Plaintiff will experience little or no disruption in his access to computers. *See* Exh. SS, Affidavit of Tim Hanners of Xact Data Discovery; Exh. TT, Curriculum Vitae of Tim Hanners of Xact Data Discovery.

District courts are granted sweeping discretion under Rule 26 to control and manage discovery.  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984).  With respect to the preservation of evidence, the breadth of a court's discretion will permit it to fashion a protective order which will prevent spoliation of evidence.  *Marrocco v. General Motors Corp.*, 966 F.2d 220 (7th Cir. 1992) (upholding imposition of sanctions for violation of a protective order designed to preserve

- 23 -

evidence).  In sum, Missouri College believes that this case presents an appropriate circumstance for the Court to authorize limited expedited discovery to ensure that evidence is preserved.

Missouri College has narrowly tailored its discovery and seeks nothing more than to preserve and examine the originals (in both hard copy and electronic form) of the documents and information Plaintiff references in his Complaint.  This Court should grant Defendant's targeted, expedited discovery into the authenticity - or lack thereof - of the documents on which Plaintiff has based his lawsuit.

Moreover, the expedited discovery will accrue to the benefit of the parties and the Court by preserving party resources.  *E.g. Semitool, Inc.*, 208 F.R.D. at 276 (N.D. Cal. 2002) (granting expedited discovery which "would ultimately conserve party and court resources and expedite the litigation.").  As set forth above, Missouri College has shown a reasonable probability that evidence upon which Plaintiff's lawsuit is based has been fabricated.  Whether evidence  has been fabricated or tampered with, and if so, by whom, will significantly alter the course of this litigation, the discovery sought, the individuals to be deposed, the evidence presented to the Court, and indeed, the entire posture of the case.  Allowing the expedited discovery will save time and money not only for the parties, but for the Court.

## CONCLUSION

For the foregoing reasons, Defendant Missouri College respectfully requests an order granting its proposed protective order and limited, expedited discovery of the core evidence Plaintiff has placed at issue in this suit as outlined in the proposed order submitted contemporaneously with this motion and memorandum.[17]

---

[17] The Proposed Order is attached to Missouri College's Motion and this Memorandum as  Exhibit I.

Respectfully submitted,

HUSCH BLACKWELL LLP

By: /s/ Bradley S. Hiles
        Bradley S. Hiles, #28907MO
        brad.hiles@huschblackwell.com
        Glennon P. Fogarty, #42983MO
        glennon.fogarty@huschblackwell.com
        Anthony G. Grice, #61929MO
        anthony.grice@huschblackwell.com
        190 Carondelet Plaza, Suite 600
        St. Louis, MO 63105
        Telephone:  (314) 480-1500
        Fax:  (314) 480-1505
        *Attorneys for Defendant Missouri College, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was filed electronically with the Court's CM/ECF system and served upon:

Paul F. Devine, Esq.
Vatterott, Harris, Devine & Kwentus, P.C.
2458 Old Dorsett Road, Suite 230
Maryland Heights, Missouri 63043
314-770-2100, 314-770-9330 (fax)
Counsel for Defendant Patricia Leader Frank Al-Khaledy

and was served by First Class U.S. mail upon:

Alireza Bakhtiari
P.O. Box 18601
St. Louis, Missouri  63108

on this 12th day of July, 2011.

        /s/ Bradley S. Hiles

- 25 -

SLC-6404376-1